UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RICHARD S.[1],                                    Case No. 2:22-cv-2176
            Plaintiff,                            Sargus, J.
                                                  Litkovitz, M.J.
      vs.


COMMISSIONER OF                                   **REPORT AND**
SOCIAL SECURITY,                                  **RECOMMENDATION**
            Defendant.

      Plaintiff Richard S. brings this action pursuant to 42 U.S.C. § 405(g) for judicial review

of the final decision of the Commissioner of Social Security ("Commissioner") finding his

disability ceased on December 21, 2016, and he no longer qualified for disability insurance

benefits ("DIB").  This matter is before the Court on plaintiff's Statement of Errors (Doc. 11),

the Commissioner's response in opposition (Doc. 12), and plaintiff's reply memorandum (Doc.

13).

**I.  Procedural Background**

      Plaintiff filed his application for DIB in October 2011, alleging disability since May 15,

2011, due to asthma, bipolar disorder, and seizures.  (Tr. 242).  Plaintiff's application was

granted with an onset disability date of May 15, 2011.  (Tr. 72-83, 109-15).  The Commissioner

conducted a continuing disability review and determined that plaintiff's disability ceased on

December 21, 2016.  (Tr. 84-104).  This determination was upheld upon reconsideration by a

state agency Disability Hearing Officer.  (Tr. 147-56).  Plaintiff, through counsel, requested and

was granted a *de novo* hearing before administrative law judge ("ALJ") Gregory G. Kenyon on

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

January 31, 2019.  Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ

hearing.  On April 4, 2019, the ALJ issued a decision finding plaintiff's disability ended as of

December 21, 2016, and that he had not become disabled again since that date.  (Tr. 12-36).

Plaintiff's request for review by the Appeals Council was denied on April 23, 2020, making the

decision of the ALJ the final administrative decision of the Commissioner.

Plaintiff filed an appeal with this Court seeking judicial review of the Commissioner's

decision.  *See Richard S. v. Comm's of Soc. Sec.*, No. 2:20-cv-3195 (S.D. Ohio 2020).  Upon

Joint Stipulation for Remand, the Court remanded the matter to the Commissioner for further

administrative proceedings.  (Tr. 2113-18).  Following remand, a second ALJ hearing was held

on January 25, 2022, at which plaintiff, represented by counsel, appeared and testified.  (Tr.

2049-80).  The ALJ issued an unfavorable decision on February 25, 2022, finding that plaintiff's

disability ended as of December 21, 2016, and that he had not become disabled again since that

date.  (Tr. 2014-48).  Plaintiff did not request review by the Appeals Council opting to directly

file suit with this Court.  This matter is properly before this Court for review.

## II.  Applicable Law

To qualify for disability benefits, a claimant must suffer from a medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A).

The impairment must render the claimant unable to engage in the work previously performed or

in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §

423(d)(2).

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

When, as here, a recipient of disability benefits challenges the cessation of benefits, the central issue is whether the recipient's medical impairments have improved to the point where he is able to perform substantial gainful activity. 42 U.S.C. § 423(f)(1). Whether an individual's entitlement to benefits continues depends on whether "there has been any medical improvement in [the individual's] impairment(s) and, if so, whether this medical improvement is related to [the individual's] ability to work." 20 C.F.R. § 404.1594(a).

The cessation evaluation process is a two-part process. *See Kennedy v. Astrue*, 247 F. App'x 761, 764-65 (6th Cir. 2007). The first part of the process focuses on medical improvement. *Id*. at 764. "Medical improvement is any decrease in the medical severity of [the individual's] impairment(s) which was present at the time of the most recent favorable medical decision that [the individual was] disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with [the individual's] impairment(s)." 20 C.F.R. §

404.1594(b)(1). The date of the most recent ALJ hearing, not the cessation of benefits date, is the relevant point of comparison for determining medical improvement subsequent to the initial award. *Difford v. Secretary of Health & Human Services*, 910 F.2d 1316, 1320 (6th Cir. 1990). That is, the ALJ must consider the plaintiff's condition at the time of the ALJ hearing and if the evidence shows he was disabled as of that date, his benefits should continue even if he was not disabled as of the cessation date. *McNabb v. Barnhart*, 340 F.3d 943, 944 (9th Cir. 2003) (citing *Difford*, 910 F.2d at 1319-20).

The second part of the cessation analysis focuses on whether the individual has the ability to engage in substantial gainful activity. *Kennedy*, 247 F. App'x at 765. The implementing regulations for this part of the evaluation incorporate many of the standards set forth in the regulations that govern initial disability determinations. *Id*. (citing former[2] 20 C.F.R. § 404.1594(b)(5) and (f)(7)). The difference is that "the ultimate burden of proof lies with the Commissioner in termination proceedings." *Id*. (citing former 20 C.F.R. § 404.1594(b)(5) and (f)(7); *Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991)). "Even where medical improvement related to [the individual's] ability to work has occurred or an exception applies, in most cases (see paragraph (e) of this section for exceptions), we must also show that [the individual is] currently able to engage in substantial gainful activity before we can find that [the individual is] no longer disabled." 20 C.F.R. § 404.1594(a); *see also* 20 C.F.R. § 404.1594(b)(5): "In most instances, we must show that [the individual is] able to engage in substantial gainful activity before [the individual's] benefits are stopped."

---

[2] 20 C.F.R. § 404.1594 was amended on March 27, 2017, to eliminate references to the consideration that the Commissioner gives to an opinion of a claimant's "treating physician." *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL 168819, at *5872-73 (Jan. 18, 2017).

In deciding whether a recipient's entitlement to disability benefits has ended, the Commissioner uses the eight-step sequential evaluation process outlined in 20 C.F.R. § 404.1594(f)(1)-(8). The steps are:

(1) Are you engaging in substantial gainful activity? If you are . . . we will find disability to have ended. . . .

(2) If you are not, do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of this subpart? If you do, your disability will be found to continue.

(3) If you do not, has there been medical improvement as defined in paragraph (b)(1) of this section? If there has been medical improvement as shown by a decrease in medical severity, see step (4). If there has been no decrease in medical severity, there has been no medical improvement. (See step (5).)

(4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b)(1) through (4) of this section; i.e., whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination. If medical improvement is not related to your ability to do work, see step (5). If medical improvement is related to your ability to do work, see step (6).

(5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (d) and (e) of this section apply. If none of them apply, your disability will be found to continue. If one of the first group of exceptions to medical improvement applies, see step (6). If an exception from the second group of exceptions to medical improvement applies, your disability will be found to have ended. The second group of exceptions to medical improvement may be considered at any point in this process.

(6) If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe (see § 404.1521). This determination will consider all your current impairments and the impact of the combination of those impairments on your ability to function. If the residual functional capacity assessment in step (4) above shows significant limitation of your ability to do basic work activities, see step (7). When the evidence shows that all your current impairments in combination do not significantly limit your physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature. If so, you will no longer be considered to be disabled.

(7) If your impairment(s) is severe, we will assess your current ability to do substantial gainful activity in accordance with § 404.1560.  That is, we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past.  If you can do such work, disability will be found to have ended.

(8) If you are not able to do work you have done in the past, we will consider whether you can do other work given the residual functional capacity assessment made under paragraph (f)(7) of this section and your age, education, and past work experience (see paragraph (f)(9) of this section for an exception to this rule).  If you can, we will find that your disability has ended.  If you cannot, we will find that your disability continues.

20 C.F.R. § 404.1594(f).

There is no presumption of continuing disability.  *Kennedy*, 247 F. App'x at 764 (citing *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286-87 n.1 (6th Cir. 1994)).  Instead, the Commissioner applies the above procedures to determine whether the claimant's disability has ended and if he is now able to work.  *Id*.

## III.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The most recent favorable medical decision finding that the [plaintiff] was disabled is the decision dated July 11, 2013.  This is known as the "comparison point decision" or CPD.

2. At the time of the CPD, the [plaintiff] had the following medically determinable impairments: seizure disorder and bipolar disorder.  These impairments were found to result in a residual functional capacity for work at any defined level of exertion that would involve no work at unprotected heights and no exposure to moving machinery or other dangerous instrumentalities.  It was determined that because of the bipolar disorder, the [plaintiff] would be "unable to reliably complete a workweek on a regular and continuing basis."

3. Through the date of this decision, the [plaintiff] has not engaged in substantial gainful activity (20 CFR 404.1594(f)(1)).

4. The medical evidence establishes that, since December 21, 2016, the [plaintiff] has had the following medically determinable impairments: seizure disorder, mild asthma, bipolar disorder, personality disorder, [and] cannabis use disorder.  These are the [plaintiff]'s current impairments.

5. Since December 21, 2016, the [plaintiff] has not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

6. Medical improvement occurred on December 21, 2016 (20 CFR 404.1594(b)(1)).

7. Since December 21, 2016, the impairments present at the time of the CPD decreased in medical severity to the point where the [plaintiff] has regained the functional capacity to perform work as described at Finding No. 10.

8. The [plaintiff]'s medical improvement is related to the ability to work because it resulted in an increase in the [plaintiff]'s residual functional capacity (20 CFR 404.1594(c)(3)(ii)).

9. Since December 21, 2016, the [plaintiff] has continued to have a severe impairment or combination of impairments (20 CFR 404.1594(f)(6)).

10. Based on the impairments present since December 21, 2016, the [plaintiff] has had the residual functional capacity to perform work at any defined level of exertion ranging from sedentary to very heavy as defined at 20 CFR 404.1567 subject to the following limitations: (1) no climbing of ladders, ropes, or scaffolds; (2) no work around hazards such as unprotected heights or dangerous machinery; (3) no operation of automotive equipment in the course of employment; (4) no concentrated exposure to temperature extremes or respiratory irritants; (5) limited to performing simple, routine, repetitive tasks; (6) no more than occasional, superficial contact with co-workers and supervisors (with 'superficial' contact defined as able to receive simple instructions, ask simple questions, and receive performance appraisals but as unable to engage in more complex social interactions such as persuading other people and resolving interpersonal conflicts); (7) no contact with the general public; (8) no close or 'over-the-shoulder' supervision; (9) no duties involving tandem tasks or teamwork; (10) no fast-paced production work; (11) no jobs involving strict production quotas; (12) limited to performing jobs that involve very little, if any, change in job duties or work routine from one day to the next.

11. Since December 21, 2016, the [plaintiff] has been unable to perform past relevant work (20 CFR 404.1565).[3]

---

[3] Plaintiff's past relevant work was a truck driver, a semi-skilled, medium exertion job, and a truck mechanic, a skilled, medium exertion job.  (Tr. 2033, 2073).

12. The [plaintiff] was born [in] . . . 1978.  He is currently 43 years old.  The [plaintiff] is classified as a "younger individual" for Social Security purposes (20 CFR 404.1563).

13. The [plaintiff] has a high-school education and about one year of college credits (20 CFR 404.1564).

14. The [plaintiff] does not have "transferable" work skills within the meaning of the Social Security Act (20 CFR 404.1568).

15. Since December 21, 2016, considering the [plaintiff]'s age, education, work experience, and residual functional capacity based on the impairments present since December 21, 2016, the [plaintiff] has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c) and 404.1566).[4]

16. The [plaintiff]'s disability ended on December 21, 2016, and the [plaintiff] has not become disabled again since that date (20 CFR 404.1594(f)(8)).

(Tr. 2020-35).

## IV.  Specific Errors

On appeal, plaintiff alleges that the ALJ erred by 1) failing to properly explain or demonstrate how plaintiff's condition improved to the point where plaintiff was no longer disabled and (2) including an arbitrary definition of "superficial" in the residual functional capacity finding with no accompanying explanation.  (Doc. 11).

### 1.  The ALJ's finding that plaintiff experienced medical improvement as of December 21, 2016 is supported by substantial evidence.

In the first assignment of error, plaintiff alleges the ALJ erred by failing to "properly explain or demonstrate how [plaintiff's] condition improved to the point where he was no longer disabled."  (*Id*. at PAGEID 2906).  Plaintiff argues he was "awarded disability benefits by way of a decision dated July 11, 2013," and the ALJ erred in finding plaintiff's "medical conditions

_____

[4]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative medium, unskilled occupations such as marker (125,000 jobs in the national economy), laundry aide (50,000 jobs in the national economy), and routing clerk (100,000 jobs in the national economy).  (Tr. 2034, 2074-75).

improved to a point where he could now sustain gainful activity." (*Id*. at PAGEID 2908). Plaintiff contends the ALJ's decision in finding medical improvement is not supported by substantial evidence for three reasons. First, plaintiff argues medical records before and after December 21, 2016 "document very similar mental health findings." (*Id*. at PAGEID 2908). Plaintiff cites treatment records from Dr. Matthew Stevenson, plaintiff's psychiatrist at the Department of Veterans Affairs ("VA"), which plaintiff alleges demonstrate "ongoing issues with mental health such as mood swings, irritability, poor sleep, and aggression." (*Id*. at PAGEID 2909, citing Tr. 959, 975, 2537). Second, plaintiff contends no medical improvement occurred because Dr. Aracelis Rivera, the state agency psychologist who reviewed plaintiff's file on reconsideration, opined that plaintiff "had been found unable to reliably complete a work week on a regular and continuing basis." (*Id*., citing Tr. 692). Third, plaintiff cites a 70% disability rating that he received by the VA in September 2012 as "further evidence that the ALJ has not sufficiently proven that [plaintiff's] medical condition improved to the extent that he can now sustain competitive employment." (*Id*. at PAGEID 2909-10).

The Commissioner argues the ALJ's decision is supported by substantial evidence because the ALJ reasonably articulated the ways in which plaintiff experienced significant medical improvement. (Doc. 12). The Commissioner contends the ALJ properly cited to VA treatment records which show plaintiff's mental impairments and accompanying symptoms improved since the July 11, 2013 comparison point decision ("CPD"). (*Id*. at PAGEID 2921-23). The Commissioner further argues the ALJ's evaluation of and reliance upon the opinions of the state agency psychologists substantially support his decision in this case. (*Id*. at PAGEID 2923-25).

On July 11, 2013, the Social Security Administration found plaintiff disabled. (Tr. 72-83).[5] In that decision, the prior ALJ noted that plaintiff's impairments resulted in "seizures, reduced stress tolerance, decreased attention and concentration, and markedly diminished interpersonal skills." (Tr. 81). The decision stated that due "to the effects of [plaintiff's] bipolar disorder," plaintiff "would be unable to reliably complete a workweek on a regular and continuing basis." (*Id*.). Further, the prior ALJ found that plaintiff's mental impairments resulted in "mild restriction[s] of activities of daily living; marked difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation, each of extended duration." (Tr. 80).

Following the continuing disability review process and first court remand, ALJ Kenyon issued an unfavorable decision on February 25, 2022. The ALJ found that plaintiff's disability ended as of December 21, 2016, and that plaintiff had not become disabled again since that date. (Tr. 2014-48). In this decision, which plaintiff alleges is not supported by substantial evidence, the ALJ explained:

> The medical evidence supports a finding that, by December 21, 2016, there had been a decrease in medical severity of the impairments present at the time of the CPD. Most notably, as discussed at Finding No. 4, the evidence supports a finding that the claimant no longer experiences "marked" limitation in his capacity to interact with others. Since December 21, 2016, the claimant's capacity to interact with others has been no worse than "moderately" limited. . . .

(Tr. 2027). In finding medical improvement, the ALJ evaluated the opinions of state agency psychologists Drs. Bruce Goldsmith and Aracelis Rivera. (Tr. 2024-25). The ALJ noted that Drs. Goldsmith and Rivera were the "only medical sources of record who presented opinion

---

[5] The July 11, 2013 decision is the CPD because it is the most recent favorable medical decision finding that plaintiff was disabled. (*See* Tr. 2017, 2020).

evidence as to the claimant's mental functioning[.]"  (Tr. 2024).  The ALJ gave the opinions of

Drs. Goldsmith and Rivera "substantial weight."  The ALJ reasoned as follows:

> In the opinion of Dr. Goldsmith and Dr. Rivera, the claimant continues to have a "severe" mental impairment.  Dr. Goldsmith assessed the claimant's condition in 2016 under the prior criteria and concluded that the claimant experiences "mild" limitation in his ability to do activities of daily living; "moderate" limitation in his ability to maintain social functioning; and "moderate" limitation in his ability to maintain concentration, persistence, and pace.  The claimant did not experience repeated episodes of decompensation each of extended duration in the relevant past according to Dr. Goldsmith.  Dr. Rivera (using the new assessment criteria) concluded in 2017 that the claimant experiences no limitation in his ability to understand, remember, or apply information.  He experiences "moderate" limitation in his ability to interact with others.  The claimant experiences "moderate" limitation in his ability to concentrate, persist, or maintain pace.  He experiences "moderate" limitation in his ability to adapt and manage oneself.
>
> Consequently, both Dr. Goldsmith and Dr. Rivera presented assessments indicating significant improvement in the claimant's mental functioning capabilities since the CPD.  This is most evident in the difference shown in the claimant's capacity to interact with others (i.e., improved from "markedly" limited at the time of the CPD to "moderately" limited by 2016).  Dr. Rivera concluded that the claimant is able to think, act, and complete multiple-step tasks (Exhibit B9F at 4).  According to Dr. Goldsmith, the claimant is capable of following and completing simple task instructions.  He can do simple tasks that are not fast paced and which do not have unusual production demands.  He is limited to performing tasks that would involve only occasional and superficial interpersonal contact.  He is limited to performing routine tasks with infrequent changes (Exhibit B2A at 18-20).
>
> * * *
>
> It is found that, by December 21, 2016, the claimant's mental capabilities had improved to the extent that he now experiences "mild" limitation in his ability to understand, remember, or apply information; "moderate" limitation in his ability to interact with others; "moderate" limitation in his ability to concentrate, persist, or maintain pace; and "mild" limitation in his ability to adapt or manage oneself.

(Tr. 2024-25; *see also* Tr. 2027).

The ALJ examined the medical evidence of record and determined there had been

substantial medical improvement with regard to plaintiff's level of functioning since 2013, the

CPD.  The ALJ acknowledged plaintiff "continued to exhibit chronic irritability and difficulty

getting along with other persons (Exhibits B4F, B5F, B8F, B13F, B15F, and B22F)."  (Tr. 2023).

11

In examining the medical evidence of record and finding medical improvement, the ALJ cited VA records showing a stable mood with no indicia of psychosis such as hallucinations, delusions, or paranoid ideation. The ALJ cited evidence showing that plaintiff's activities of daily living were inconsistent with plaintiff's allegations of pain and resulting limitations. The ALJ also noted that plaintiff had full contact with reality and was able to control his temper and conform his conduct to socially acceptable standards. (Tr. 2028, citing Tr. 675, 790, 959, 1648, 2832, 2845; *see also* Tr. 2024-25).

Plaintiff argues the ALJ's medical improvement finding is not supported by substantial evidence because the record before and after December 21, 2016 document very similar mental health findings as reflected in the VA medical records. Specifically, plaintiff contends treatment records from Dr. Stevenson reflect incidents with the police, family members, and other individuals in plaintiff's neighborhood; symptoms of mood swings, irritability, poor sleep, and aggression; and signs including dysphoric mood and irritable affect, all of which demonstrate ongoing issues with mental health. (Doc. 11 at PAGEID 2909, citing Tr. 675, 678, 802-03, 812, 819, 959, 975, 2537).[6]

Plaintiff first cites a January 23, 2017 treatment note from Dr. Stevenson as evidence that plaintiff had "a dysphoric mood and irritable affect." (*Id*., citing Tr. 678). Plaintiff further contends that on March 23, 2017, Dr. Stevenson noted that plaintiff "was suffering from mood swings." (*Id*., citing Tr. 675). The ALJ, however, expressly cited the exhibit containing these treatment records, among others, in finding plaintiff "continued to exhibit chronic irritability and difficulty getting along with other persons." (Tr. 2023, citing Exhibit 8F, which includes Dr. Stevenson's treatment notes from January 23 and March 23, 2017). Further, state agency

---

[6] There is no evidence in the record that Dr. Stevenson issued any opinions as to plaintiff's functional limitations resulting from his impairments.

psychologist Dr. Rivera, who reviewed plaintiff's file upon reconsideration on May 9, 2017 expressly considered Dr. Stevenson's January 23 and March 23, 2017 treatment records in formulating her opinion on plaintiff's mental functioning limitations. (Tr. 692). Dr. Rivera noted that at the CPD, plaintiff was having significant difficulties managing his interactions with others, including physical fights and domestic violence. (Tr. 693). Dr. Rivera noted that "currently" plaintiff has not experienced physical altercations and denied domestic violence issues. (*Id.*). Based on these and other medical records, Dr. Rivera opined that the severity of plaintiff's mental health symptoms had decreased such that plaintiff was now "moderately" as opposed to "markedly" limited in his ability to interact with others. The ALJ gave Dr. Rivera's opinions "substantial weight," and plaintiff included no specific error relating to the ALJ's weighing of the state agency psychologists' opinions. The ALJ appropriately considered the records cited by plaintiff when determining whether there was a decrease in medical severity based on improvement in the symptoms, signs, and/or laboratory findings associated with plaintiff's impairments. *See* 20 C.F.R. § 404.1594(b)(1). These records do not undermine the ALJ's finding of medical improvement.

Plaintiff also cites to Dr. Stevenson's records from June, August, and November 2017, which he alleges document "incidents with the police, his wife's family, and other individuals in [plaintiff's] neighborhood" (Doc. 11 at PAGEID 2909, citing Tr. 812, 819) and note "problems with mood swings, irritability, poor sleep, and aggression." (*Id.*, citing Tr. 802-03). Plaintiff cites a June 2017 record in which he reported "he has been having problems with a neighbor. . . ." (Tr. 819). Plaintiff also reported, however, that "the police have now talked to the neighbor and told the neighbor to leave him alone so he feels better about the situation." (*Id.*). Two months later plaintiff reported "the situation with his neighbor has worked out and they now

have a 'truce.'"  (Tr. 813).  Plaintiff also reported during that same visit that his "medications work well when he takes them."  (*Id*.).

The August 31, 2017 record cited by plaintiff involves his call to a crisis hotline after an argument with his in-laws, during which the police were called.  Plaintiff initially eluded police but subsequently reunited with his family.  A sheriff's deputy responded to the home and determined there was no threat and, thus, no action was taken.  (Tr. 812).  The following day, plaintiff reported he was doing better and was safe.  (Tr. 813).  He sounded "a bit anxious" but "was pleasant and polite."  (*Id*.).

The November 21, 2017 record plaintiff cites is a periodic updated "Treatment Plan" in which the "Active Problem" identified was "[BIPOLAR]:  My mood has been unstable in the following ways: mood swings, irritable, poor sleep, aggression."  (Tr. 803).  In progress notes from plaintiff's actual visit that day, however, plaintiff reported he was feeling better since he called the crisis hotline in August; he has gotten "distance" from people he was having conflicts with previously; and he was intoxicated the day he called the crisis hotline.  (Tr. 1050).  He also reported "only partial compliance with lithium."  (Tr. 1051).  On objective examination, Dr. Stevenson reported plaintiff's mood was euthymic, his affect was anxious but not irritable or expansive, he was goal directed without paranoia or delusions, and he denied hallucinations or suicidal ideation.  (*Id.*).  Plaintiff fails to explain how these records from 2017 undermine the ALJ's finding of medical improvement in this case.

Plaintiff also alleges that "[e]ven into 2018 and through 2021, Dr. Stevenson's notes documented ongoing issues with mental health such as mood swings irritability, poor sleep, and aggression."  (Doc. 11 at PAGEID 2909, citing Tr. 959, 975, 2537).  The records plaintiff cites, however, do not undercut the ALJ's finding of medical improvement.  Rather, they appear to

14

support the ALJ's finding that plaintiff's mood was stable with the use of prescribed

psychotropic medication, and he was able to maintain control and act appropriately while

maintaining a therapeutic level of prescribed medication. (Tr. 2024). Tr. 975 is a treatment note

from the VA reflecting that plaintiff "lost it" during a pulmonary function study, becoming very

agitated and violent and verbally threatening suicide. (Tr. 975). When he spoke with Dr.

Stevenson ten minutes later, plaintiff reported he was able to compose himself and was feeling

calm. Plaintiff denied that he was feeling suicidal when he made that statement or currently, and

he reported stress with taking a lot of tests and with Social Security. Dr. Stevenson discussed

medication changes, which plaintiff declined. Plaintiff indicated he missed a dose of his

medication that morning and the previous evening, and Dr. Stevenson encouraged compliance

with medication. (*Id*.).

Tr. 959 is a September 11, 2018 treatment note from Dr. Stevenson. (Tr. 959). The

treatment note reflects plaintiff's "frustration with social security and their interpretation of his

activity level." (*Id*.). Plaintiff "report[ed] stable mood other than feeling irritated about the

disability issue." (*Id*.). Contrary to plaintiff's argument in his statement of errors that this

treatment note reflects that he suffered from "poor sleep" (Doc. 11 at PAGEID 2909), the

September 11, 2018 treatment note reflects that plaintiff was "staying up late at night, but

sleeping at least 6-7 hours." (Tr. 959). Plaintiff further reported that he was "able to stay in

control and act appropriately" while on his medication. (*Id*.).

Tr. 2537, which plaintiff cites as evidence that no medical improvement occurred, is a

page from an April 29, 2021 Treatment Plan reiterating plaintiff's "Active Problem" as

"[BIPOLAR]: My mood has been unstable in the following ways: mood swings, irritable, poor

sleep, aggression." (Tr. 2537). However, in the very next sentence in the comment section,

15

plaintiff reported he was "progressing, [] had stable mood, and [was] med[ication] compliant[.]" (*Id.*).  Plaintiff further reported that he was getting along well with his wife, although they were separated, and he has another relationship for "companionship" that was going well.  He denied any violent thoughts of behavior; was thinking of volunteering in the local food pantry; was doing bible study online; and reported his mood was stable.  (Tr. 2538).  On mental status examination, Dr. Stevenson reported that plaintiff was oriented to person, place, and time; he had euthymic mood, coherent and appropriate speech, and appropriate thought content and process; and he was goal directed.  (Tr. 2538-39).

Plaintiff fails to explain how the above cited records undercut the ALJ's conclusion on medical improvement.  The ALJ acknowledged plaintiff's "well-documented history of mental symptoms attributable to bipolar disorder."  (Tr. 2022).  However, the ALJ also pointed to records showing that plaintiff's mood was stable when he took his medications as prescribed.  (Tr. 2028, citing Tr. 2538, 2541, 2557, 2583, 2819, 2845).  The ALJ noted that plaintiff was briefly hospitalized when his wife left him in 2019, but he was not suicidal and his "mental health seems improved to an even greater extent since the turmoil of the divorce has subsided."  (Tr. 2028, citing 2832, 2845).  *See* Tr. 2583 (1/21/20: plaintiff reported his "relationship with his wife was exacerbating his mood and anxiety symptoms as his stress has decreased greatly since she is out of his life.  He denies any aggressive behavior since he was last seen.  He denies having any thoughts or plans of harming self or others."); Tr. 2845 (7/28/21: plaintiff reported "he completed his dissolution with his wife" and "feels they were able to talk and he feels it went well"; "feels he and his son get along well since he and his wife separated.  His step daughter came up to visit and spent more time with him than her own mother.  He feels happy to support his children.  He has had several relationships in interim, but nothing long term.  He finds his

mood continues to be stable as long as he takes the medication."; he denied "reckless,"

aggressive or threating behavior); Tr. 2819-20 (11/21/21: "Pt reports feeling better since he was

last seen. He feels he has been able to get some closure with his ex-wife"; "feels he has learned

to manage his emotions regarding his relationship better than in the past"; "his mood has been

'pretty good'"; "He has been able to make some friends. He reports medication compliance. He

feels the medication is working well to maintain mood stability"; "He has been sleeping well.").

The ALJ thoroughly reviewed the medical record, and his finding of medical improvement is

substantially supported by the record evidence. (Tr. 2023, 2024-26, 2027-29, 2031-33).

Second, and as best the Court can discern, plaintiff contends the ALJ's decision is not

supported by substantial evidence because state agency psychologist Dr. Rivera opined that

plaintiff "had been found unable to reliably complete a work week on [a] regular and continuing

basis." (Doc. 11 at PAGEID 2909, citing Tr. 692). Dr. Rivera's statement simply reflects the

finding of the previous ALJ, which Dr. Rivera included as background prior to discussing her

medical findings and opinions related to plaintiff's mental functioning. (Tr. 80, 692). It does not

reflect Dr. Rivera's opinion on plaintiff's then-current functioning. (Tr. 690-692, mental residual

functional capacity assessment). To the extent plaintiff argues that the ALJ's decision is not

supported by substantial evidence based upon this statement, plaintiff's argument is belied by the

record.

Third, plaintiff points to a September 2012 finding by the VA that plaintiff was 70%

disabled due to his bipolar disorder as further evidence that medical improvement did not occur.

(Doc. 11 at PAGEID 2909). Plaintiff argues the VA disability "rating has not changed" and the

"VA never found that [plaintiff's] bipolar improved, or found that [plaintiff] could go back to

substantial gainful activity." (*Id*. at PAGEID 2909-10). While plaintiff acknowledges "the VA

decision is not binding," he argues that "the fact that the VA has not deemed [his] condition to have improved is further evidence that the ALJ has not sufficiently proven that [his] medical condition improved to the extent that he can now sustain competitive employment." (*Id*. at PAGEID 2910).

For claims filed before March 27, 2017, the ALJ is required to consider the VA disability determination and explain how he analyzed that decision.[7]  However, "a determination made by another agency that you are disabled or blind is not binding" on the Commissioner.  20 C.F.R. § 404.1504 (effective until March 26, 2017).  *See Turcus v. Soc. Sec. Admin*., 110 F. App'x 630, 632 (6th Cir. 2004) ("[A] decision by another government agency as to an individual's disability is not binding upon the Social Security Administration.").  Nevertheless, as the ALJ must consider all the evidence in the record in making a disability determination, he must consider disability decisions made by other governmental agencies like the VA and explain the consideration given to such evidence.  *See* Soc. Sec. Ruling 06-3p, 2006 WL 2329939 (evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered).  Likewise, the Sixth Circuit has held that an ALJ must consider a disability decision of the Veterans Administration and articulate reasons for the amount of weight assigned to that decision.  *Rothgeb v. Astrue*, 626 F. Supp. 2d 797, 809 (S.D. Ohio 2009) (citing *Harris v. Heckler*, 756 F.2d 431, 434 (6th Cir. 1985)).  *See also Orr v. Comm'r of Soc. Sec*., No. 3:13-cv-346, 2014 WL 3666791, at *6 (S.D. Ohio July 22, 2014).

The ALJ addressed the VA disability rating as follows:

As noted in the prior decision, Veterans Administration records document a 70-percent disability rating due to bipolar disorder (Exhibits 8D at 3 [prior file]; B13F

---

[7] For claims filed after March 27, 2017, however, the applicable regulations expressly "state that the ALJ need not provide an analysis concerning plaintiff's disability rating from the VA." *Raymond R. v. Comm'r of Soc. Sec*., No. 1:21-cv-539, 2022 WL 1590817, at *4 (S.D. Ohio May 19, 2022), *report and recommendation adopted*, 2022 WL 2965289 (S.D. Ohio July 27, 2022) (citing 20 C.F.R. § 404.1504).

at 39; B24F at 164 and 166).  The Veterans Administration assigned the claimant a 100-percent disability rating (Exhibit 8D at 3 [prior file]).  The Veterans Administration determined that the claimant was rendered 100 percent disabled effective August 30, 2011, because he was "unable to work" due to his service connected disability (Exhibit B22D at 3).  A determination of "individual unemployability" was made by the Veterans Administration (Exhibit B22D at 12).

* * *

The Veterans Administration (VA) medical evidence detailed above has been given due consideration in reaching this decision, but it is given no weight.  What this agency meant by "individual unemployability" is not clear nor is such a generic statement consistent with the specific and precise definition of "disability" for Social Security purposes.  Whether any reduction in an individual's functional capability renders the individual "disabled" (i.e., ultimately, whether he is unable to perform work existing in significant numbers in the national economy) is an issue to be resolved under Social Security rules and regulations.  Hence, the conclusion of this agency that the claimant was unable to work due to "individual unemployability" is given no weight.  Similarly, the VA findings of a 70-percent disability rating due to bipolar disorder and a 100-percent disability rating overall have been given due consideration but, as explained above, those conclusions are not binding on the Social Security Administration.  The VA disability ratings are given limited (little) weight.  A primary reason for this is because the VA disability ratings appear to be diagnosis driven while the Social Security Administration's analysis is more concerned with the functional effect(s) of any documented impairments.

(Tr. 2022-23).

To the extent plaintiff argues the ALJ erred in giving little weight to the VA's disability

rating, the Court finds no error.  First, the ALJ reasonably discounted the VA's disability rating

on the basis that the VA's disability rating differs from a disability determination made by the

Social Security Administration.  *See Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 535 (6th

Cir. 2019) (finding no error in ALJ's decision to give only "some consideration" to the VA's

decision where the ALJ "acknowledged the VA's disability rating but explained that the VA uses

different standards for making disability determinations and that the VA's records on [the

claimant] contained neither function-by-function analysis nor language describing how [the

claimant's] PTSD limits her ability to work"); *see also Joseph v. Comm'r of Soc. Sec.*, 741 F.

19

App'x 306, 310 (6th Cir. 2018) (finding no error where the ALJ discounted the VA's disability rating, in part, because of the differences between the VA's disability system and the Social Security's disability system).

Second, the ALJ's decision to give little weight to the VA's disability rating is supported by substantial evidence. Reading the ALJ's decision as a whole, the ALJ reasonably determined that the VA treatment records and subsequent medical opinions by the state agency psychologists show that medical improvement occurred, and the "medical evidence supports a finding that, by December 21, 2016, there had been a decrease in medical severity of the impairments present at the time of the CPD." (Tr. 2027). As noted above, VA treatment records "from September 2018 show that [plaintiff's] mood was stable with the use of prescribed psychotropic medication. It was noted that he was able to maintain control and to act appropriately while maintaining a therapeutic level of prescribed medication." (Tr. 2024, citing Tr. 959; *see also* Tr. 2025, 2028). The ALJ thoroughly examined the medical records from Dr. Stevenson and the VA and reasonably found that medical improvement occurred. Therefore, the Court finds that the ALJ properly considered and explained his reasons for giving little weight to the VA's disability rating and those reasons are supported by substantial evidence.

Accordingly, the ALJ reasonably determined that plaintiff experienced medical improvement as of December 21, 2016, and this finding is supported by substantial evidence. 20 C.F.R. § 404.1594(b)(1). The Court therefore recommends that plaintiff's first assignment of error be overruled.

### 2. The ALJ's residual functional capacity is supported by substantial evidence.

This matter was previously remanded because, among other reasons, the "ALJ omitted Dr. Goldsmith's assessed limitation for superficial interpersonal contact from the RFC based on

the weight accorded to the opinion." (Tr. 2122).  In vacating the ALJ's prior decision, the

Appeals Council stated as follows:

> While the ALJ adopted a number of limitations in the RFC assessment related to the quality and not just the quantity of contact with others, such as limitations on close supervision, tandem tasks, and teamwork, he did not provide an explanation for why he deviated from the language used by Dr. Golds[mith] nor how these restrictions accounted for the opined restriction to superficial contact.  This issue is significant in this case because the cessation of the claimant's benefits was based on his improved ability to interact with others.  While an ALJ does not have to rely on opinion evidence to formulate the limitations in the RFC, he or she does have to provide a narrative discussion with cites to evidence in the record for how the restrictions were derived pursuant to Social Security Ruling 96-8p.  The hearing decision does not contain such a narrative discussion for the assessed mental limitations regarding the claimant's ability to interact with others.  Further consideration of Dr. Golds[mith's] non-examining opinion is necessary.

(Tr. 2123).

On remand, the ALJ's RFC included Dr. Goldmith's finding that plaintiff was limited to

"superficial" contact.  The ALJ explained:

> The issue raised in the remand order has been rectified. . . . Dr. Goldsmith's opinion evidence has been afforded substantial weight (as set forth above).  His asserted limitation for superficial interpersonal contact has been included in the residual functional capacity found to be applicable since December 21, 2016. . . .

(Tr. 2025).  The RFC crafted by the ALJ limited plaintiff to "no more than occasional,

superficial contact with co-workers and supervisors (*with 'superficial' contact defined as able to*

*receive simple instructions, ask simple questions, and receive performance appraisals but as*

*unable to engage in more complex social interactions such as persuading other people and*

*resolving interpersonal conflicts*)" and "no contact with the general public."  (Tr. 2029)

(emphasis added).

In his second assignment of error, plaintiff alleges the RFC finding is not supported by

substantial evidence because the ALJ included an arbitrary definition of the term "superficial."

(Doc. 11 at PAGEID 2910).  Plaintiff argues the ALJ "overstepped by creating some arbitrary

21

definition of the term 'superficial' without providing any sort of explanation as to how he arrived

at that definition." (*Id*. at PAGEID 2911).  Plaintiff contends that by failing to include an

explanation as to the definition of "superficial," it is "impossible for a subsequent reviewer to

understand how the ALJ arrived at the conclusions he did." (*Id*. at PAGEID 2912).[8]

The Commissioner disagrees, arguing the ALJ's RFC was more restrictive than any

medical opinion of record because the ALJ "entirely banned all public contact" and added

"additional social interactions, by limiting Plaintiff to no close or 'over-the-shoulder' supervision

and no duties involving tandem tasks or teamwork." (*Id*., citing Tr. 2029).  The Commissioner

contends plaintiff failed to explain "how he was harmed by the extra social interaction

limitations the ALJ added to the RFC." (*Id*. at PAGEID 2928).  Moreover, the Commissioner

argues that plaintiff failed to carry his burden that the restrictions in the ALJ's RFC "were

inconsistent with the term 'superficial' or by showing he would be unable to perform the jobs

identified at step five if 'superficial' had not been defined this way." (*Id*.).

The ALJ alone is responsible for determining a plaintiff's RFC.  *See* 20 C.F.R. §

404.1546(c).  While medical source opinions are considered, the final responsibility for deciding

the RFC is reserved to the Commissioner.  *See* former 20 C.F.R. § 404.1527(d)(2); *Coldiron v.

Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs

that the ALJ—not a physician—ultimately determines a claimant's RFC.").  "Even where an

ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state

---

[8] Plaintiff argues the term "superficial" has "been defined by the Appeals Council" in a "notice dated July 27,
2022[.]"  (Doc. 11 at PAGEID 2912, citing Exhibit A, page 4).  Plaintiff, however, fails to attach any exhibits to his
statement of specific errors, and the Court cannot identify in the record where this purported definition of
"superficial" is located.  Further, even if the Appeals Council defined the term "superficial" in a "notice dated July
27, 2022," the ALJ's decision is dated February 25, 2022, which is over five months prior to any "notice" allegedly
issued by the Appeals Council.  Plaintiff fails to explain how the Appeals Council's definition of the term
"superficial," which occurred five months after the ALJ's decision, would have any consequence in this action
currently before the Court.

agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). "However, if the ALJ accepts a medical opinion but does not include a restriction recommended by that expert in the RFC, the ALJ must explain why he did not do so." *Hankinson v. Comm'r of Soc. Sec.*, No. 2:18-cv-58, 2020 WL 240812, at *2 (S.D. Ohio Jan. 16, 2020). "[A] district court cannot uphold an ALJ's decision, even if there 'is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.'" *Ephraim v. Saul*, No. 1:20-cv-00633, 2021 WL 327755, at *7 (N.D. Ohio Jan. 8, 2021), *report and recommendation adopted sub nom. Ephraim v. Comm'r of Soc. Sec.*, 2021 WL 325721 (N.D. Ohio Feb. 1, 2021) (quoting *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011)).

There is no dispute that the ALJ adopted Dr. Goldsmith's opinion that plaintiff was limited to superficial interaction with coworkers and supervisors.[9] Plaintiff takes issue with the ALJ's definition of "superficial," which the ALJ defined as able to receive simple instructions, ask simple questions, and receive performance appraisals but as unable to engage in more complex social interactions such as persuading other people and resolving interpersonal conflicts. (Tr. 2029). Plaintiff argues the ALJ created his own arbitrary definition of the term superficial without any explanation for that definition or for the specific limitations included therein.

The issue is whether the ALJ's failure to explain how he arrived at his definition of "superficial" interaction requires a remand for further proceedings. In *Betz v. Comm'r of Soc. Sec.*, No. 3:21-cv-2408, 2022 WL 17717496 (N.D. Ohio Nov. 8, 2022), *report and*

---

[9] The ALJ went a step further and restricted plaintiff to no contact with the public, and plaintiff does not take issue with this finding.

*recommendation adopted*, 2022 WL 17985680 (N.D. Ohio Dec. 29, 2022), the court addressed a

similar situation where the ALJ found the plaintiff was limited to "superficial contact," and the

ALJ defined that term as "no tasks involving arbitration, negotiation, confrontation, directing the

work of others, persuading others or being responsible for the safety or welfare of others." *Id*., at

*1.  The plaintiff in *Betz* similarly argued the ALJ erred by failing to provide any reasoning or

explanation for using that definition or for rejecting counsel's alternative definition. *Id*., at *10.

The *Betz* court rejected that argument, explaining in relevant part:

> The term "superficial interaction" is not defined under the Dictionary of
> Occupational Titles ("DOT") or Selected Characteristics of Occupations ("SCO").
> *See Stoodt v. Comm'r of Soc. Sec.*, No. 3:20-cv-2370, 2022 U.S. Dist. LEXIS
> 43108, at *49, 2022 WL 716105 (N.D. Ohio Jan. 13, 2022).  And there have been
> contrary findings as to whether the "plain meaning" of the term requires further
> definition.  *See Beulah v. Comm'r of Soc. Sec.*, No. 1:20-cv-2271, 2022 U.S. Dist.
> LEXIS 92055, at *94, 2022 WL 1609236 (N.D. Ohio Mar. 25, 2022) (holding that
> the term "superficial" does not have a defined meaning for purposes of vocational
> testimony); *but contrast Dawn M. v. Comm'r of Soc. Sec.*, No. 3:20-cv-0258, 2022
> U.S. Dist. LEXIS 102055, at *18, 2022 WL 2037804 (S.D. Ohio June 7, 2022)
> (holding that the term "superficial" "is a well-defined limitation in the Social
> Security context.").  In cases in which the definition of "superficial" interaction has
> been in dispute, however, it has been tied to the consideration of VE testimony or
> a medical opinion.  *See e.g., Stoodt*, 2022 U.S. Dist. LEXIS 43108 at *47-54, 2022
> WL 716105 (remanding the ALJ's decision because the ALJ failed to build a logical
> bridge between the evidence and the ALJ's finding that the claimant was limited to
> "superficial" interactions when such findings were contrary to the state agency
> consultants' opinions); *Beulah*, 2022 U.S. Dist. LEXIS 92055, at *86-98, 2022 WL
> 1609236 (remanding the ALJ's decision because the ALJ failed to adequately
> explain her failure to include a "superficial" interaction limitation in the RFC after
> putting one to the VE).
>
> ***
>
> At its core, Betz's argument rests on the contention that the ALJ failed to adequately
> explain how he chose his definition of the term superficial contact, making the
> definition arbitrary.  The ALJ, however, defined the scope of "superficial"
> interactions and used that definition both in posing hypothetical questions to the
> VE and in articulating his RFC findings. (Tr. 20, 57-58).  Further, none of the
> opinion evidence provided a conflicting definition of superficial contact.  Thus,
> unlike other cases that have addressed an ALJ's use of the term "superficial"

interactions, this case does not hinge on whether the ALJ's definition was consistent with the VE's or other opinions' articulations.

\*\*\*

Looking at the decision as a whole and with common sense allows for meaningful review of the ALJ's evaluation of Betz's RFC. *See Reynolds*, 424 F. App'x at 416. Although the ALJ must connect the RFC limitations to the evidence and build a logical bridge between the two, this does not require that the ALJ provide explicit reasoning for why he defined superficial the way he did. Rather, the ALJ needed to explain why he determined that Betz was limited to superficial contact *as he defined it*, and it is sufficient that the record not be clearly contrary to that definition. *See Fleischer*, 774 F. Supp. 2d at 877. And here, the ALJ's discussion of the record evidence related to Betz's mental health conditions built such a bridge.

\*\*\*

Although the ALJ did not explicitly provide a reason for why he chose to define "superficial" as he did, the evidence both makes such a definition reasonable and does not directly contradict any portion of it. Nor has Betz identified any contradictory evidence. As such, for us to nitpick the ALJ's definition of "superficial" would risk involving us with invading the zone of choice within which the Commissioner operates. . . .

*Id.*, at \*10-12 (citation omitted). *See also Charlee N. A. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3085, 2023 WL 312791, at \*5 (S.D. Ohio Jan. 19, 2023) ("The undersigned agrees with those courts that find no reversible error where the opining source neglects to define the term 'superficial interaction' *and* the ALJ provides a sufficient explanation for why he or she determined that the claimant was limited to superficial contact as the ALJ defines that term.") (citing *Betz,* 2022 WL 17717496), *report and recommendation adopted,* 2023 WL 1766096 (S.D. Ohio Feb. 3, 2023).

In the instant case, Dr. Goldsmith opined that plaintiff was limited to "superficial interpersonal contact," without defining the term "superficial." (Tr. 102). The ALJ adopted Dr. Goldsmith's limitation of "superficial interpersonal contact," and the ALJ defined that term as meaning "able to receive simple instructions, ask simple questions, and receive performance

appraisals but as unable to engage in more complex social interactions such as persuading other people and resolving interpersonal conflicts." (Tr. 2029).

Although the ALJ did not explain how he arrived at his definition of superficial, the definition he chose is supported by substantial evidence and is not contradicted by the other record evidence. Dr. Goldsmith opined plaintiff was not significantly limited in the ability to understand, remember, and carry out very short and simple instructions and ask simple questions or request assistance. (Tr. 101). In turn, the ALJ's definition of "superficial" includes Dr. Goldsmith's opinions by defining "superficial" "as able to receive simple instructions [] and ask simple questions[.]" (Tr. 2029). Further, Dr. Goldsmith opined that plaintiff was moderately limited in the ability to work in coordination with or in proximity to others without being distracted by them, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. (Tr. 101-03). Dr. Rivera likewise opined that plaintiff was moderately limited in his social interactions, including his ability to accept instructions and respond appropriately to criticism from supervisors and to get along with coworkers or peers without distracting them of exhibiting behavioral extremes. (Tr. 691). The ALJ accommodated these moderate limitations and restrictions by finding plaintiff was able to "receive performance appraisals," but he was "unable to engage in more complex social interactions such as persuading other people and resolving interpersonal conflicts." (Tr. 2029). In addition, the ALJ's hypothetical questions to the VE incorporated the ALJ's definition of superficial, and

based on this definition, the VE testified there were a significant number of available jobs. (Tr. 2074-75).

The ALJ's defined scope of "superficial" interactions was incorporated into the RFC determination and the hypothetical questions posed to the VE. Plaintiff has not cited to opinion evidence that contradicts the ALJ's superficial interaction definition. Similar to *Betz*, the ALJ here was required "to explain why he determined that [plaintiff] was limited to superficial contact *as he defined it*, and it is sufficient that the record not be clearly contrary to that definition." *Betz*, 2022 WL 17717496, at *11. The ALJ's discussion of the medical record and, in particular, the opinions of the state agency psychologists, substantially support the ALJ's definition of "superficial" enabling this Court to meaningfully review the decision. As the ALJ adequately explained the basis for his RFC finding—a finding that the ALJ alone is empowered to craft—the Court recommends that plaintiff's second assignment of error be overruled.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's Statement of Errors (Doc. 11) be **OVERRULED** and the Commissioner's non-disability finding be **AFFIRMED**.

2. Judgment be entered in favor of the Commissioner and this case be closed on the docket of the Court.

Date: 4/5/2023

Karen L. Litkovitz
Chief United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

RICHARD S.,                                    Case No. 2:22-cv-2176
      Plaintiff,                        Sargus, J.
                                            Litkovitz, M.J.

      vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).